# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DERRICK WAYNE FREEMAN,
    *Plaintiff*,

*v.*                              CASE NO. 14-cv-11146

COMMISSIONER OF              DISTRICT JUDGE BERNARD A. FRIEDMAN
SOCIAL SECURITY,           MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (docket 12) be DENIED, that Defendant's Motion for Summary Judgment (doc. 13) be GRANTED, and the decision of the Commissioner be affirmed.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for supplemental security income benefits (SSI). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 12, 13.)

---

[1]The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

[2]The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Plaintiff filed an application for SSI with a protective filing date of April 20, 2010, alleging that he became unable to work on May 9, 2008. (Transcript, Doc. 6 at 146, 294-300.) Plaintiff's claim was denied at the initial administrative stages. (Tr. 164-67.) On August 4, 2011, Plaintiff appeared and testified at an Administrative Law Judge (ALJ) hearing, which was continued on December 9, 2011, to allow Plaintiff to obtain his complete medical records. (Tr. 104-25, 122, 72-103.) The ALJ considered the application for benefits *de novo* and in a decision dated December 28, 2011, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act. (143-55.) Plaintiff requested Appeals Council review of that decision and the Appeals Council remanded the claim by order dated January 11, 2013. (Tr. 160-63.)

Plaintiff appeared at a hearing before ALJ Gregory Holiday on August 8, 2013, who again considered the application for benefits *de novo*. (Tr. 19, 35-71.) In a decision dated September 4, 2013, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time prior to January 3, 2013, and became disabled as of January 3, 2013. (Tr. 27, 28.) Plaintiff requested Appeals Council review of this decision. (Tr. 7-13.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 22, 2014, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) On March 18, 2014, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal

standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r*

*of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### C.     Governing Law

Disability for purposes of SSI is defined as being:

> [U]nable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a)(SSI). Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. § 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity within the past 15 years. (Tr. 21.) At step two, the ALJ found that Plaintiff's post-cervical spine fusions, cervical spine myelopathy, history of transient ischemic attack and diabetes are "severe" impairments and his anxiety, history of tobacco abuse, history of alcohol abuse, hypertension, overweight to mild obesity and right eye droop are non-severe impairments within the meaning of the second sequential step. (Tr. 22.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 22-23.) The ALJ found that

prior to January 3, 2013, the Plaintiff had the residual functional capacity (RFC) to perform a range of light work as defined in the Regulations[3] with the following additional limitations:

> [H]e needed a change of position between sitting and standing up to twice per hour, could only occasionally push and pull with his left upper and left lower extremities, could not constantly flex or extend or rotate his neck, could only frequently do gross manipulative tasks with his left (non-dominant) hand, could not do overhead reaching with his left arm, could occasionally stoop, balance, kneeling (sic), crouch, and crawl, could occasionally climb ramps and stairs, could occasionally use left foot controls, could not climb ropes or ladders or scaffolds, is limited to simple routine repetitive tasks (at "SVP" level one or two as defined in the Dictionary of Occupational Titles, has no reading, writing or arithmetic skills beyond the third grade level, and that the work would not require any complex written or verbal communication. (Tr. 23.)

At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 26.) At step five the ALJ found that prior to January 3, 2013, Plaintiff was not disabled because he retained the ability to perform jobs that exist in significant numbers in the national economy. (Tr. 26.) The ALJ found that as of January 3, 2013, Plaintiff had the RFC to perform sedentary exertional work as defined by the regulations, with the same postural, environmental, and manipulative restrictions that existed prior to January 3, 2013, and the additional limitation that the Plaintiff needed to use a hand-held assistive device for ambulation and balance. (Tr. 25.) As of January 3, 2013, the ALJ found that a finding of "disabled" was directed by Medical-Vocational Rule 201.09[4] of the

---

[3] Light work is defined as

[L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 416.967(b).

[4] 201.00 "Maximum sustained work capability limited to sedentary work as a result of severe medically determinable impairment(s)." 201.09 requires a finding of disability for an individual "closely approaching advanced age" with a limited or less education, a history of unskilled or no work. (Id.) "Closely approaching advanced age" is defined as age 50-54. See 20 C.F.R. § 416.963(d). The regulations state in part that "[w]e generally consider that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. § 416.964(b)(3).

Regulations, due to Plaintiff's age, education, work experience and limitation to sedentary exertional work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

### E. Administrative Record

Plaintiff was 50 years old at the time of the most recent hearing. (Tr. 35, 311.) Plaintiff has a sixth grade education. (Tr. 342.) At the hearing Plaintiff testified that he has never had a job. (Tr. 40.) He was in prison from approximately 1985; prior to that, his brother found part-time work for him. (Tr. 41.) He testified that his reading and writing skills prevent him from working. (*Id.*) Plaintiff testified that he performed janitorial jobs in prison and worked out a lot. (Tr. 42.) Plaintiff testified that he has been married two years and now lives in a house with his wife. (Tr. 43.)

Plaintiff explained that he has problems with his balance. (Tr. 46.) He said that he is able to shower by himself but uses a shower chair. (Tr. 47.) Plaintiff testified that he takes two showers a day for the warm water. (Tr. 56-57.) Plaintiff cooks, but he testified that his wife makes the big meals for him and he showed her how to cook. (Tr. 48-49.) He goes on short shopping trips with his wife. (Tr. 49.) Plaintiff and his wife go to a park about twice a week to walk. (Tr. 51.) Plaintiff testified that he can walk half a block before stopping. (Tr. 52.)

Plaintiff explained that he can sit about 40 minutes at the longest, before he has to get up and stretch. (Tr. 56.) Plaintiff testified that he can stand for an hour to an hour and a half, he uses a cane to stand, he tries to walk without his cane and he sometimes falls; he also testified that he could stand for 25 minutes. (Tr. 61-62.) He explained that he can lift eight pounds with his right hand and three with his left. (Tr. 63.) Plaintiff testified that he wears a neck brace and takes pain medication. (Tr. 57.) He said that he takes Vicodin two to three times a day with no side effects and it stops the pain and helps him sleep. (Tr. 58.) He takes Flexeril twice a day which was making him drowsy and walk slowly. (Tr. 59.) He testified that his right eye is better than his left eye,

which "jumps a lot." (Tr. 46.) Plaintiff has a driver's license but he is afraid to drive. (Tr. 50.) His relatives visit him at home and he goes to his brother's house sometimes. (Tr. 50.) He attends church for Bible study. (Tr. 61.)

Plaintiff underwent a cervical fusion for degenerative joint disease in 2008. (Tr. 865.) In September 2012 he underwent a corpectomy at C5 and an anterior cervical fusion with cage screws at C4-6. (Tr. 865.)  His medical history includes  diabetes, hyperlipidemia, transient ischemic attack and hypertension. (Tr. 865.) The remainder of relevant medical evidence is discussed in the analysis below.

At the hearing, the ALJ obtained testimony from a vocational expert (VE). The ALJ asked the VE to consider an individual of Plaintiff's age, and education who could perform light exertion work with the following additional limitations:

> [T]he person can alternate between sitting and standing up to two times per hour. No more than occasional pushing or pulling with the left upper extremity and the left lower extremity. No climbing any ladders, ropes, or scaffolding. No more than occasional climbing ramps or stairs, balancing, stooping, crouching, kneeling, and crawling.
>
> No overhead reaching and handling with the left upper extremity. No more than frequent gross manipulation with the left dominant upper extremity. Must avoid concentrated exposure to hazards, like moving machinery, and unprotected heights.
>
> Is limited to tasks that don't require any reading, writing, or math calculation, and is limited to simple, routine, repetitive tasks. (Tr. 65-66.)

The VE testified that such an individual could perform the following unskilled work at the light exertional level: hand packager (representative Dictionary of Occupational Titles (DOT) code 559.687-074) with 2,500 positions in the Southeastern Michigan regional market defined as the City of Detroit and the surrounding five counties and more than 100,000 positions in the national economy; small products assembler (DOT code 706.684-022) with 2,500 positions in the region

and 100,000 nationally; and visual inspector, checker, (DOT code 222.687-010) with 1,000 positions in the region and 80,000 nationally. (*Id.*)

The ALJ then asked the VE to consider the same individual with the additional limitations that the "person can only occasionally operate foot controls with the left lower extremity. No constant rotation, flexion, or extension of the neck. And in terms of reading, writing, and math, no reading, writing, or math beyond the third grade level, and no complex written or verbal communication." (Tr. 66.) The VE testified that the same jobs would be available in the same numbers. (Tr. 67.) The ALJ then asked the VE to consider the individual in the second hypothetical (a cumulation of the first hypothetical and the second) with the additional limitation to "jobs that can be performed while using a hand held assistive device, such as a cane, for both ambulation and for balance." (*Id.*) The VE testified that such an individual could perform the work as a visual inspector, in the same numbers, and could also perform work as a lobby attendant (DOT code 344.667-010) with 2,500 positions in the region and more than 100,000 nationally. (*Id.*)

The ALJ then asked the VE to consider the same individual as in the third hypothetical, yet limited to sedentary exertion jobs. (*Id.*) The VE testified that only one job would be available, that of visual inspector (DOT 712.687-018) with 1,500 positions available in the region and more than 120,000 nationally. The ALJ then asked the VE to consider the same restrictions as the prior hypothetical, with the additional limitation to a job that allows the individual to be "off task at least 20 percent of the typical workday on a fairly consistent basis." (Tr. 68.) The VE testified that such a limitation would eliminate all jobs and competitive full time employment. (*Id.*) Plaintiff's attorney asked follow-up questions, including asking the VE to assume that the individual could not get to work at least two days per month on a regular and consistent basis. (*Id.*) The VE testified that such a limitation would eliminate the prior jobs and all competitive employment. (*Id.*)

### F.      Analysis

Plaintiff argues that the ALJ's RFC for light exertional work is not supported by substantial evidence where Plaintiff's necessity for a cane was not included in the RFC. Plaintiff also argues that the ALJ erred in failing to obtain an updated medical opinion or consultative examination after additional medical records were added to the file. (Doc. 12 at 19.) Plaintiff argues that the ALJ failed to comply with SSR 96-8p in assessing Plaintiff's RFC, calling the ALJ's RFC conclusory and lacking both in rationale and references to supporting evidence. (Doc. 12 at 21.) Finally, Plaintiff argues that the ALJ failed to comply with the Regulations because he did not obtain a psychological or psychiatric consultative evaluation where there was evidence in the record of a mental impairment. (Doc. 12 at 22.)

### 1.      Evaluation of Plaintiff's Mental Impairment

Plaintiff argues that the ALJ should have obtained a psychological or psychiatric opinion and bases his argument in part on the prior ALJ's finding that Plaintiff's anxiety was severe. (Doc. 12 at 22.) Plaintiff calls this a "previously established severe impairment." (Doc. 12 at 25.) This argument is of no avail. Acquiescence Ruling (AR) 98-4(6) provides that "if a determination or decision on a disability claim has become final, the Agency may apply administrative res judicata with respect to a subsequent disability claim under the same title of the Act if the same parties, facts and issues are involved in both the prior and subsequent claims." AR 98-4(6). The first ALJ's decision was vacated by the Appeals Council and is not a final decision by the Agency. Therefore, it does not have the effect of res judicata on any determination after it.

Next, Plaintiff argues that 20 C.F.R. § 404.1503(e) requires that a state agency psychologist or psychiatrist review the file when there is evidence of a mental impairment. *See also* 20 C.F.R. § 404.903(e). Defendant points out that, contrary to Plaintiff's argument, the medical record was

reviewed by state agency consultative medical evaluator, Rose Moten, Ph.D., who completed a psychiatric review technique on August 16, 2010, and concluded that there was no evidence of a medically determinable mental impairment. Dr. Moten noted that Plaintiff was "not prescribed psych meds or engaged in [treatment]. School records support intellectual functioning in the low average to average range. ADLs indicate [claimant] manages finances and reflect no psych limitations." (Tr. 137.)

Plaintiff relies on a report from the Detroit Rescue Mission that assigned a Global Assessment of Functioning (GAF) score of 45 to Plaintiff and contained a diagnosis of anxiety with a note to rule out schizoaffective disorder. (Tr. 459.) The handwritten report, signed by Edith M. Coleman, L.P., appears to bear dates of both August 30, 2010, and August 30, 2011. (*Id.*) The diagnoses appear to be based on Plaintiff's self-report, for example that he had mental health hospitalization while he was in prison, with treatment for schizoaffective disorder and underwent substance abuse treatment while incarcerated. (*Id.*) The writer assigned a GAF score of 45, noting that Plaintiff was homeless, unemployed, and had been incarcerated for 21 years. (*Id.*)

The record shows that Dr. Coleman also saw Plaintiff on September 3, 2010. (Tr. 461.) Neither record identified specific limitations related to the anxiety or GAF. The ALJ specifically addressed Dr. Coleman's report, noting that it is the only evidence of "significant mental impairment." The ALJ's findings that the record did not show limitations related to a mental impairment did not rely solely on a lack of objective medical evidence or mental health treatment, but he also cited contradictory evidence of record, including physical treatment sources that stated there was no significant anxiety or depression, and the lack of Plaintiff's complaints or assertions of the same. (Tr. 22.)

There is no further evidence of mental health consultation or complaints, including no

evidence of such treatment while Plaintiff was incarcerated. A Michigan Department of Corrections Medical Transfer form dated October 27, 2009, notes, "No abnormal mental health history noted." (Tr. 404.) The evidence includes Department of Corrections records of Plaintiff's vaccinations going back as far at 1997, so there is little reason to believe these records are incomplete. (Tr. 412.) As the ALJ noted in his decision, at the hearing Plaintiff did not allege mental impairments, nor did he allege them in his application. (Tr. 22, 35-71.) He initially applied for disability based on a pinched nerve, head injury, herniated disc and diabetes that he alleged prevented him from working. (Tr. 341.) Plaintiff answered "no" to the question whether he had "seen a doctor or other health care professional or received treatment at a hospital or clinic, or had a future appointed scheduled . . . [f]or any mental condition(s) (including emotional or learning problems)." (Tr. 344.) In August 2010 on a Medical and Social History form he did not select a history of either depression or any "other mental illness." (Tr. 445.)

Plaintiff has identified no evidence in the file showing functional limitations attributable to a mental impairment. In his brief, Plaintiff speculates that his own testimony regarding naps, fatigue, difficulty with concentration and a doctor's notation of mildly impaired short-term memory may be symptoms of mental impairments, or side effects from medications. (Doc. 12 at 24.) The ALJ pointed out that Plaintiff had testified that the medications made him drowsy. (Tr. 24, 59-60.) The doctor who noted "mildly impaired short term memory" on November 27, 2012, also found at the same examination that Plaintiff was "[n]egative for psychiatric symptoms" and stated that Plaintiff has "difficulty with short term memory and was evaluated for TIA," attributing the short term memory deficit to possible TIAs and not mental conditions. (Tr. 866, 868.)

The ALJ also considered Plaintiff's activities of daily living in making his findings. He pointed out that Plaintiff concentrates well enough to read. (Tr. 24.) The ALJ's findings are also

supported by a function report completed by Plaintiff and dated June 17, 2010, in which he reported that the conditions which limit his ability to work were a pinched nerve and disk in his lower back. (Tr. 356-63.) He reported that he was living at a shelter at that time and he spent his time exercising and reading. (Tr. 356-57.) He reported needing no reminders to perform his personal grooming tasks and take his medications. (Tr. 357.) He reported conversing on the phone with friends and family and attending church and social groups, for which he does not need anyone to accompany him. (Tr. 360.) He reported no problems getting along with others, yet socially he is "not as active anymore because of [his] physical ability." (Tr. 361.) He reported that he can pay attention for "a long time," follows written instructions "well," and is able to follow spoken instructions "very good." (*Id*.) He reported that he is able to "communicate and understand others clearly." (*Id*.) He reported that the gets along with authority figures, handles stress and handles changes in routine "fair" or "fairly." (Tr. 362.)

The ALJ's considered the evidence of record and explained his findings regarding Plaintiff's non-severe mental condition. The findings are supported by substantial evidence, including a medical evaluator's opinion, a lack of evidence of related limitations, treatment, medication and signs or symptoms to support diagnoses, and the affirmative statements and reports that show, other than minimal and isolated contact with the Rescue Mission, Plaintiff has no history regarding mental health treatment and has not reported related limitations.

**2.      Whether the ALJ Should Have Obtained An Updated Medical Evaluation or Examination After New Medical Records Were Added To The File**

Plaintiff argues that the ALJ erred in failing to obtain an additional consultative medical examination or evaluation when new medical evidence was added to Plaintiff's file. Plaintiff relies on Social Security Ruling (SSR) 96-6p to argue that an updated medical opinion is necessary

"where additional medical evidence is received that could modify the State Agency Consultant's findings that the impairment is not equivalent in severity to any impairment in the Listing." (Doc. 12 at 19.)

SSR 96-6p requires an ALJ or the Appeals Council to obtain an updated medical opinion in the following circumstances:

[1.]    When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable, or

[2.]    When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's findings that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments. SSR 96-6p

Neither of these circumstances exist in the case at bar. Plaintiff argues that new evidence showed that his impairments were worse, yet he fails to identify evidence that would support a finding that Plaintiff meets or equals a listing. Neither does the ALJ's decision indicate that the ALJ believed new evidence may suggest that Plaintiff's condition equaled the severity of any impairment in the Listing of Impairments.

Plaintiff also argues that the ALJ failed to follow SSR 83-20 to call on a medical advisor to determine Plaintiff's onset of disability date. (Doc. 12 at 17-28.) SSR 83-20 sets forth policy for determining the date of onset of disability, including in cases where "precise evidence" is not available and inferences must be made.

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence

14

concerning onset is available, such evidence should be secured before inferences are made. SSR 83-20.

In *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006), the plaintiff argued that the ALJ erred by "not requiring a medical expert to infer an onset date pursuant to SSR 83-20." *Id.* at 836-37. The court found that the portion of SSR 83-20 on which the plaintiff relied "contemplates situations when an individual claims disability and there is no development of the medical record on which the ALJ can rely to ascertain onset." *Id.* The court noted that McClanahan's record was "well developed and carefully reviewed by the ALJ." *Id.* The court concluded that the ALJ did not err in failing to specifically mention SSR 83-20 where he had "reviewed the record for indications that disability onset occurred prior to the . . . diagnosis date, and found that the medical evidence did not support such a finding." *Id*. at 836. The court noted that the plaintiff's assertion that the ALJ "had the burden of proof to establish the onset date is unsupported by any legal authority, and runs counter to the general regulatory burden of proof that requires claimants to prove their disability to the Commissioner." *Id.* at 837 (citing 20 C.F.R. § 404.1512(a), *see also* 20 C.F.R. § 416.912(a)).

Here, the issue is not one of inferring the onset date of disability prior to the earliest medical evidence or earliest examination of record. On the contrary, the record contains medical evidence throughout the relevant period and the ALJ relied on the medical evidence of record to determine Plaintiff's onset date. The ALJ's decision sets forth a chronology of evidence on which the ALJ properly relied to determine the onset date.

Plaintiff underwent a consultative physical examination with Bina Shaw, M.D., on July 6, 2010. (Tr. 429-35.) Dr. Shaw noted that Plaintiff did not use a cane on exam and his gait was normal. (Tr. 25, 430, 435.) He had full range of motion in the bilateral hips, ankles and knees. (Tr.

430.) Muscle strength was 5/5 in all extremities and Plaintiff was able to get off the table and chair without assistance. (Tr. 420.) Dr. Shaw concluded that "[b]ased on today's exam, the patient can work eight hours a day. He can sit, stand, walk, bend minimally and lift at least 10-15 pounds of weight without difficulty." (Tr. 25, 430.) Dr. Shaw diagnosed hypertension, controlled with treatment, diabetes type II controlled with treatment, post cervical disc surgery, and post lumbar laminectomy with "mild residual pain." (Tr. 431.) The ALJ also cited records from as recently as July and August, 2011, wherein Plaintiff's gait, balance and coordination were reportedly "intact" on examination. (Tr. 25, 452, 455.)

Plaintiff underwent a cervical spine surgery on September 24, 2012. (Tr. 865.) There is evidence that Plaintiff complained of lower left extremity weakness on November 16, 2012, resulting in a fall. (Tr. 942.) The treatment provider noted that Plaintiff "reports walking 1 mile yesterday (usually riding in car) and his wife also reports [history of] alcohol abuse . . . drinking up to 10- 12 ounce beers (5 -24 ounce) at a time 2-3 X week." (Tr. 942.) This record contains one of the few references by a treatment provider to Plaintiff's use of a cane. The treatment provider noted that Plaintiff "was using a cane to ambulate" prior to admission. (Tr. 948, 949.) It was noted that Plaintiff reported that he had not been cleared for physical therapy since his September 2012 neurosurgery. (Tr. 948.) The doctor's impression was that the left lower extremity weakness may have been "related to fatigue after exerting himself (reportedly walking a mile - not yet cleared for PT by neurosurgery) as it is improved today, but not yet back at baseline." (Tr. 946.)

At a November 27, 2012 follow-up appointment, it was noted that his status had not changed, his pain occurred persistently, yet he was "using medication and having good response. (Tr. 865.) His activity level was "back to pre-operative level." (Tr. 865.) He was negative for limping and negative for gait disturbance and psychiatric symptoms. (Tr. 866.) He was positive

for back pain and neck stiffness. (*Id.*) It was noted that he had a recent fall and he uses a cane. (Tr. 868.)

The ALJ found that Plaintiff initially had improvement following his second cervical spine fusion in 2012, yet had an increase in symptoms in early 2013. (Tr. 26.) The ALJ relied on records from University Health center in early 2013, including records from a February 20, 2013 examination where the doctor reported that Plaintiff had "mild left-sided weakness" and "drags his left foot when walking." (Tr. 26, 972.) The doctor assessed "cervical myelopathy with pyramidal signs predominately on the left and sensory findings predominately on the right (Brown-Sequad Syndrome)," noting "intermittent worsening which appear like TIAs" but which the doctor did not believe were "true TIAs." (Tr. 972.) Plaintiff was advised to wear a collar to help prevent the spells and follow-up in three to four months or earlier if required. (*Id.*) The ALJ also relied on an August 2013 CT scan that revealed "[c]hanges related to the cervical fusion with intact hardware," "[s]traightening of the cervical spine [that] could be related to the postsurgical changes" noting that "[m]uscle spasm cannot be excluded," and "[a]nterior osteophytes at C4-C7 and posterior spurring at C4-C5 and C5-C6 with associated minimal effacement of the anterior thecal sac." (Tr. 974.) Plaintiff was referred to physical and occupational therapies in July 2013. (Tr. 983.) The evidence supports that ALJ's findings that despite some initial improvement following the 2012 surgery, he had additional problems and his impairment was more severe by early 2013. (Tr. 26.) The ALJ properly explained his findings regarding the onset of disability date and relied on specific evidence in the record to support his onset date. The finding is supported by substantial evidence.

### 3.   Whether The ALJ's RFC Was Supported By Substantial Evidence

Plaintiff argues that the ALJ's RFC was conclusory, does not contain any rationale or

reference to supporting evidence and does not comply with SSR 96-8p. SSR 96-8p provides that

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

> Symptoms. In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:

> • Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;

> •Include a resolution of any inconsistencies in the evidence as a whole; and

> •Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work. SSR 96-8p.

The ALJ explained his RFC findings and cited record evidence in support. For example, the ALJ gave "significant weight" to examining medical consultant Dr. Shaw's findings. (Tr. 25.) Dr. Shaw concluded that the Plaintiff "can work eight hours a day. He can sit, stand, walk, bend minimally and lift at least 10-15 pounds of weight without difficulty." (Tr. 25, 430.) The ALJ's exertional limitation to light is supported by Dr. Shaw's findings. Consistent with Dr. Shaw's findings, light work includes lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). The ALJ also limited stooping and crouching to occasional, consistent with Dr. Shaw's limitation on bending. The ALJ cited Plaintiff's spinal fusions and other impairments as reasons for limiting the exertional and postural activities. (Tr. 22.)

The ALJ discussed the issues of both whether and when the record shows that Plaintiff required the use of a cane. Examination notes regularly described Plaintiff's gait as "[n]egative for gait disturbance." (Tr. 913, 926.) Dr. Shaw noted that Plaintiff was not using a cane at his 2010 examination. On September 30, 2011, Plaintiff presented with left sided weakness and was admitted with a diagnosis of transient ischemic attack (TIA). (Tr. 694.) He was oriented with a normal range of motion, yet had left-sided weakness and an unsteady gait. (Tr. 693.) On October 1, 2011, Plaintiff underwent a Physical Therapy Initial Evaluation Acute Care after the TIA and it was noted that Plaintiff was safe with a standard cane. (Tr. 764-65.) By the time of discharge it was noted that Plaintiff's gait had normalized and Plaintiff reported "almost complete resolution of his symptoms." (Tr. 645, 678, *see also* 665.) Yet Plaintiff was also noted to be employed cutting lawns and doing handyman-type work. (Tr. 759.) A neurology consultation from the hospital admission from September 30 through October 1, 2011, notes that Plaintiff "is active, mowing lawns on foot" and had "[n]o chest pain or doe [dyspnea on exertion] when he does this work." (Tr. 670.)

Although he did not conclude that Plaintiff required a cane for work prior to January 3, 2013, the ALJ limited Plaintiff's walking and standing by including a limitation to jobs that allow Plaintiff to change position between sitting and standing up to twice per hour. (Tr. 23.) This walking and standing limitation may be inconsistent with Plaintiff's testimony that he can only walk about half a city block, but as the ALJ points out, the RFC limitation is not inconsistent with the range of walking distances reported in the record, including walking one mile in November 2012, and Plaintiff's self report that he could walk three to four city blocks. (Tr. 24, 361, 942.) The ALJ cited the records wherein it was noted that Plaintiff was mowing lawns and performing handy-man work during 2011, within the period of time for which the ALJ found ability to work

at the light exertional level. (Tr. 24.)

Despite some notations of full range of motion in the neck, the ALJ noted that Plaintiff reported neck pain in July 2011 that was not getting any worse. (Tr. 23, 429, 450.) Accordingly, the ALJ limited Plaintiff's flexing, extending and rotating his neck to frequent, which is less than constant. (Tr. 23.) The ALJ also cited evidence of some mild muscle weakness in 2012, evidenced predominately on the left side. (Tr. 25, 862-63.) Due to weakness in the left extremities, Plaintiff was limited to less than constant gross manipulative tasks with the left arm, no overhead reaching with the left arm, no more than occasional operation of foot controls with the left foot and no more than occasional pushing or pulling with the left arm and/or leg. (Tr. 23.)  Similarly, the ALJ limited stair and ramp climbing, balancing, and kneeling, and restricted Plaintiff from climbing ropes, ladders or scaffolds. (*Id*.) Finally, the ALJ made clear that non-exertional limitations regarding the complexity and communication requirements of the work were related to Plaintiff's education level, rather than a mental impairment. (Tr. 22, 23.) The ALJ properly explained the light RFC and his findings were supported by substantial evidence in the record.

The ALJ then found that as of January 3, 2013, Plaintiff had the RFC to perform sedentary work with all of the previous limitation and an additional requirement that he needs a "hand-held device for ambulation and balance." (Tr. 25.) Plaintiff argues that the ALJ did not "outline the medical evidence he relied upon in making the conclusions concerning plaintiff's residual functional capacity as of January 3, 2013." (Doc. 12 at 22.) On the contrary, the ALJ cited records from University Health Center beginning in 2013 that shows Plaintiff dragging his left leg with ambulation, as well as CT scans showing post-surgical changes in the cervical spine, despite initial improvement after the 2012 surgery, and sensory loss in the left arm and leg. (Tr. 26, 894, 902, 903, 972, 974.) The 2013 CT scan showed straightening of the cervical spine. (Tr. 974.) This

straightening was reported in a November 2012 imaging study. (Tr. 891.) Post-surgery improvement in 2012 had included improvement in bilateral arm strength. (Tr. 876, 904.) Consistent with the ALJ's findings and records on which he relied, records from January and February 2013 showed Plaintiff reported numbness in the extremities, (Tr. 897, 901.) The numbness was not reported in October or November 2012, following the surgery. (Tr. 883, 875, 878). The ALJ cited the 2013 evidence as a basis for his reduced RFC and his findings were both explained and supported by substantial evidence in the record.

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ's RFC was supported by substantial evidence in the record. The ALJ properly relied on the VE's testimony in response to the hypothetical question to find that Plaintiff could perform a significant number of jobs in the economy prior to January 3, 2013. The ALJ explained his finding of a changed RFC as of January 3, 2013, and a finding of disability pursuant to the Medical-Vocational Rules. The ALJ's findings at step five were supported by substantial evidence in the record.

"Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *See Casey*, 987 F.2d at 1233 (citing *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989)). "It is the rare case, the exception, in which every piece of evidence points incontrovertibly towards the holding." *Phillips v. Sec'y of Health & Human Servs.*, 812 F.2d 1407 at *2 (6th Cir. 1987). The ALJ's decision was supported by substantial evidence in the record and his findings were articulated in his decision.

**G.     Conclusion**

The ALJ's decision to deny benefits was within the range of discretion allowed by law, it is supported by substantial evidence and there is simply insufficient evidence to find otherwise. Defendant's Motion for Summary Judgment (doc. 13) should be granted, that of Plaintiff (doc. 12) denied and the decision of the Commissioner affirmed.

**III.    REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 837 (6th Cir. 2006) (*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

*s/* 𝕮𝖍𝖆𝖗𝖑𝖊�ˢ 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER
United States Magistrate Judge

Dated: December 15, 2014